UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

ISHMAEL LADON COLLINS,

        Plaintiff,

v.

UNKNOWN STORY et al.,

        Defendants.
_____/

Case No. 2:23-cv-177

Honorable Jane M. Beckering

**OPINION**

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.  **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility.

Plaintiff sues Defendant Unknown Story, presently acting warden at KCF; however, Plaintiff indicates that at the time of the events in the complaint Defendant Story was a deputy warden. (Compl., ECF No. 1, PageID.2.) In the body of the complaint, Plaintiff also identifies as a defendant previous KCF Warden Mike Brown (*id.*); however, Plaintiff does not list Brown as a defendant in the caption. (*Id.*, PageID.1.) Plaintiff also names as defendants "Unknown Maintenance Supervisor" and "Unknown Maintenance Subordinate." (*Id.*) In the caption, Plaintiff indicates that there might be more than one such maintenance supervisor—"MAINTENANCE SUPERVISOR(S) (*id.*, PageID.1)—and that there are two or more maintenance subordinates—"MAINTENANCE SUBORDINATES" (*Id.*).

Plaintiff alleges that on April 11, 2023, Plaintiff woke up gasping for air. (*Id.*, PageID.2.)[1] He noticed that the entire cubicle was covered with dust and that there were particles in the air. He was forced to walk outside the unit to catch his breath.

When Plaintiff returned inside, he approached an unknown maintenance worker. He asked the worker why he had not evacuated the inmates before he stirred up the dust by pulling up old carpet in the cubicles. The worker replied: "I don't know why they didn't remove you guys, there

---

[1] All of Plaintiff's factual allegations appear on pages 2 and 3 of his complaint. (ECF No. 1, PageID.2–3.)

could be asbestos, mold or anything floating in the air from this old dilapidated carpet, but you would have to take that up with the Deputy Warden of housing." (*Id.*)

The next day, maintenance workers returned to pull up the carpet for a second day. Plaintiff again lost his breath. He passed out. He fell from the top bunk. He spat up blood and choked on the blood. He blacked out, was dizzy, lost his balance, and continued to have difficulty breathing, heart palpitations, and intermittent fever. He was taken to the hospital. The doctor there told Plaintiff he had contracted pneumonia from a bacterial infection in his lungs. Plaintiff reports that the doctor opined that Plaintiff must have inhaled something foreign, that the foreign inhalant might cause future problems, and that Plaintiff might need an MRI of his lungs.

After four days in the hospital, Plaintiff returned to KCF. He requested an MRI of his lungs, to no avail. He has continued to have problems breathing, standing, and maintaining his balance. He has also suffered chest pain, nausea, shortness of breath, and joint and muscle pain. Plaintiff notes that his complaints regarding his symptoms have been consistently disregarded and that an unidentified KCF nurse practitioner (not named as a defendant) told him "If you're not dying, the health care provider is not going to authorize any test to see what's wrong with you, so deal with it." (*Id.*, PageID.3.)

Plaintiff contends that Defendants, jointly and severally, have violated his Eighth Amendment right to be free of cruel and unusual punishment and his Fourteenth Amendment right to due process before he can be deprived of his liberty. Plaintiff seeks an unspecified amount of damages, trebled, and an award of fees and costs.

**II.     Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff contends that Defendants' conduct violated his Fourteenth Amendment right to due process and his Eighth Amendment right to be free of cruel and unusual punishment.

A.   **Eighth Amendment Protection**

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated

5

under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff raises two distinct claims arising from Defendants' alleged deliberate indifference to his health or safety: one claim based on the risk of harm created by the dust when the carpet was removed and one claim based on the risk of harm caused by the failure to provide medical care for the symptoms Plaintiff experienced after he returned from the hospital.[2]

### 1. Dusty Conditions of Confinement

Plaintiff suggests that he was exposed to a substantial risk to his health or safety because the dust stirred up by the carpet removal ***might*** have contained asbestos or mold. The courts have recognized health risks attendant to the presence of asbestos or mold. *See, e.g.*, *Pack v. Artuz*, 348 F.Supp.2d 63, 80 (S.D.N.Y., 2004) (indicating that exposure to airborne asbestos fibers of sufficient intensity and duration could create a substantial risk of serious harm); *Taylor v. Madison Cnty. Sheriff's Dep't,* No. 19-1230-JDT-cgc, 2019 WL 6718676, at *2 (W.D. Tenn. Dec. 10, 2019) (stating "[e]xposure to black mold may constitute an objectively serious risk of serious harm to inmate health under the Eighth Amendment"). But Plaintiff does not allege that he was actually

---

[2] Plaintiff does not contend that Defendants failed to provide appropriate medical care in response to his symptoms at the time the carpet was being removed. Indeed, his allegations suggest that he was provided prompt medical care, including transport to the hospital for treatment.

exposed to asbestos or mold and he certainly does not allege that any Defendant knew that pulling up the carpet would expose Plaintiff to asbestos or mold.

The most that Plaintiff has alleged is that he was exposed to dust and that the exposure triggered significant respiratory symptoms for Plaintiff. Plaintiff does not allege that any other prisoner or MDOC employee suffered such symptoms. Nonetheless, the facts alleged support the inference that Plaintiff suffered health consequences as a result of his exposure to the dust. Indeed, it appears that Plaintiff may have been particularly vulnerable to whatever risk of harm was posed by the dust. But Plaintiff does not allege any facts that support the inference that Defendants were aware that the dust posed any risk of harm generally or that Defendants were aware that the dust might pose a particular risk of harm to Plaintiff. Put differently, Plaintiff has failed to allege that Defendants were aware of a substantial risk of serious harm from removing the carpets and then disregarded that risk. Thus, Plaintiff has failed to allege facts to support his conclusory statements that Defendants violated his Eighth Amendment rights by exposing him to dust when the carpets were removed.

### 2. Deliberate Indifference to Plaintiff's Post-Hospitalization Symptoms

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced,

deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). The significant symptoms alleged by Plaintiff support the inference that he suffered a serious medical need.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with

8

knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

Plaintiff's medical claim fails with regard to the subjective component. He alleges no facts that support an inference that Defendant Story (or Warden Brown), Defendants Maintenance Supervisor(s), or Defendants Maintenance Subordinates were made aware of Plaintiff's serious symptoms that arose after he returned from the hospital, days after the carpet was removed. Where Plaintiff has not alleged that the named defendants were aware of the serious medical need, he necessarily has not alleged that they were deliberately indifferent to that need. Therefore, Plaintiff has not stated a claim for deliberate indifference to the alleged serious medical need.

### B.     Fourteenth Amendment Due Process

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). That is how Plaintiff presents his due process claims; he claims that "Defendants . . . depriv[ed] Plaintiff of his liberties without due process of law" when they "deprived Plaintiff of his right to adequate health care and protection for hazardous materials . . . ." (Compl., ECF No. 1, PageID.5.)

Although Plaintiff raised his Fourteenth Amendment claim as a procedural due process claim, that is not the type of protection afforded to the right to medical care. The Supreme Court explained the nature of that protection in *DeShaney v. Winebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189 (1989), as follows:

> . . . . [I]n certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals. In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), we recognized that the Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the States through the Fourteenth Amendment's Due Process Clause, *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), requires the State to provide adequate medical care to incarcerated prisoners. 429 U.S., at 103–104, 97 S.Ct., at 290–291. We reasoned that because the prisoner is unable "'by reason of the deprivation of his liberty [to] care for himself,'" it is only "'just'" that the State be required to care for him. *Ibid.*, quoting *Spicer v. Williamson*, 191 N.C. 487, 490, 132 S.E. 291, 293 (1926).
>
> In *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), we extended this analysis beyond the Eighth Amendment setting, holding that the substantive component of the Fourteenth Amendment's Due Process Clause requires the State to provide involuntarily committed mental patients with such services as are necessary to ensure their "reasonable safety" from themselves and others. *Id.*, at 314–325, 102 S.Ct., at 2457–2463; *see id.*, at 315, 324, 102 S.Ct., at 2457, 2462 (dicta indicating that the State is also obligated to provide such individuals with "adequate food, shelter, clothing, and medical care"). As we explained: "If it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed—who may not be punished at all—in unsafe conditions." *Id.*, at 315–316, 102 S.Ct., at 2457–2458; *see also Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983) (holding that the Due Process Clause requires the responsible government or governmental agency to provide medical care to suspects in police custody who have been injured while being apprehended by the police).
>
> But these cases afford petitioners no help. Taken together, they stand only for the proposition that when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. *See Youngberg v. Romeo, supra*, 457 U.S., at 317, 102 S.Ct., at 2458 ("When a person is institutionalized—and wholly dependent on the State[,] . . . a duty to provide certain services and care does exist"). The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and

reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. *See Estelle v. Gamble, supra*, 429 U.S., at 103–104, 97 S.Ct., at 290–291; *Youngberg v. Romeo, supra*, 457 U.S., at 315–316, 102 S.Ct., at 2457–2458. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf. *See Estelle v. Gamble, supra*, 429 U.S., at 103, 97 S.Ct., at 290 ("An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met"). In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*DeShaney*, 489 U.S. at 198–200 (footnotes omitted).[3] The Sixth Circuit Court of Appeals has recognized that, to the extent the right to medical care is a due process right, it is "a substantive due process right . . . ." *Colson v. City of Alcoa, Tenn.*, 37 F.4th 1182, 1187 (6th Cir. 2022).

The fact that the right to medical care is a substantive due process right essentially means that the state cannot avoid the obligation to provide medical care by affording a person the essential guarantees of procedural due process—notice of the intended deprivation and an opportunity to be heard. Thus, Plaintiff cannot prevail on a procedural due process claim for failure to provide medical care or a claim to provide safe conditions of confinement. Those claims are properly dismissed.

Moreover, convicted prisoners like Plaintiff do not need to rely on a substantive due process right with regard to medical care or reasonable safety. They are entitled to medical care (or reasonably safe conditions of confinement) under the Eighth Amendment because, as noted

---

[3] Although the *DeShaney* opinion is specifically directed to medical care, the reasoning is equally applicable to the state's obligation to provide reasonable safety for persons in custody. *DeShaney*, 489 U.S. at 200 (stating "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, **_medical care, and reasonable safety_**—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause" (emphasis added)).

above, a failure to provide such care would be inconsistent with contemporary standards of decency and, thus, would render their punishment cruel and unusual. Critically, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 269 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners); *see also United States v. Lanier*, 520 U.S. 259, 272 n.7 (6th Cir. 1997) ("*Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."); *Walker v. Norris*, 917 F.2d 1449, 1455 (6th Cir. 1990) (explaining that, "plaintiff's section 1983 claim in a [deliberate indifference] case such as this must be for redress of eighth amendment, not fourteenth amendment substantive due process, rights" (citations omitted)); *O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 344 (6th Cir. 2014 ) ("O'Brien's allegations concerned the denial of medical care, thus, '[t]he Eighth Amendment is the primary source of substantive protection' available to him . . . not the more generalized notion of 'substantive due process[.]'"). Because the Eighth Amendment provides an explicit textual source of protection against the alleged deliberate indifference to risks of harm, Plaintiff's substantive due process claim—if any such claim was intended—is properly dismissed.[4]

---

[4] Although the relevant protection afforded convicted prisoners arises from the Eighth Amendment, that amendment cannot protect every person held in custody, because the Eighth Amendment is a limit on "punishment." Not every person held in custody is subject to punishment.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: October 17, 2023      /s/ Jane M. Beckering
                             Jane M. Beckering
                             United States District Judge

---

*DeShaney*, 489 U.S. at 199 n.6. Indeed, until a person has been convicted, the person cannot be punished. *Id*. The right to medical care and reasonably safe conditions of confinement for such a person—a pretrial detainee, for example—must arise from a source other than the Eighth Amendment; the Supreme Court has settled on the Due Process Clause of the Fourteenth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).